1    wo
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                        FOR THE DISTRICT OF ARIZONA
8
9    International Flora Technologies, Ltd., an)    No. CV-09-00717-PHX-ROS
     Arizona corporation,                      )
10                                             )    **ORDER**
                      Plaintiff,               )
11                                             )
     vs.                                       )
12                                             )
                                               )
13   Desert Whale Jojoba Company, Inc., et al.,)
                                               )
14                    Defendants.              )
                                               )
15   _____  )

16          Before the Court are the parties' proposed constructions of the claim terms of Patent

17   No. 7,435,424 ("the Patent").  The Court constructs the disputed claim terms below.

18                                **BACKGROUND**

19          On April 8, 2009, Plaintiff filed a Complaint alleging Defendant infringed its Patent.

20   The Patent involves a substance derived from jojoba oil that has a tendency to remain on the

21   skin and which is useful as a carrying agent for the application of cosmetics,

22   pharmaceuticals, insect repellants, and other chemicals to the skin.  The Patent claims both

23   the composition of the substance and methods of using it to apply ingredients to the skin.

24                                 **STANDARD**

25          The claims of a patent "define the invention to which the patentee is entitled the right

26   to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  The meaning of

27   the claim language is a question of law for the courts to decide. *Markman v. Westview*

28

1   *Instruments*, 517 U.S. 370, 389-91 (1996).  Courts need only construe the claim language that

2   is in dispute. *NTP, Inc. v. Research In Motion, Ltd*, 418 F.3d 1282, 1311 (Fed. Cir. 2005).

3       The words in a patent claim are generally given their ordinary and customary

4   meaning,  determined from the standpoint of a person of ordinary skill in the art at the

5   effective filing date of the patent application. *Phillips*, 415 F.3d at 1312-13; *see also Tex.*

6   *Digital Sys., Inc. v. Telegenix, Inc.*, 303 F.3d 1193, 1202 (Fed. Cir. 2002) ("There is a "heavy

7   presumption that they mean what they say and have the ordinary meaning that would be

8   attributed to those words by persons skilled in the relevant art.") (internal quotation marks

9   and citation omitted).

10      The claim language must be read in the context of the specification of which it is a

11  part. *Phillips*, 415 F.3d at 1316.  Claim terms  must be construed so as to be consistent with

12  the specification as a whole, including the description of the claimed invention. *Id.*  A

13  patentee may also, acting as lexicographer, supply a particular definition of a claim term  in

14  the specification, in which case the inventor's definition governs. *Id.*  In addition to the

15  specification, the prosecution history may be considered as evidence of how the PTO and the

16  inventor understood the patent, if it is in evidence. *Id.* at 1317.

17      Although the intrinsic evidence should be emphasized and considered first, courts may

18  also consider extrinsic evidence, including expert testimony, dictionaries, and learned

19  treatises. *Id.*  Dictionaries, especially technical dictionaries, are particularly useful. *Id.*

20                              **DISCUSSION**

21  **1.      "jojoba-derived material"**

22      Plaintiff's proposed construction of "jojoba-derived material" is: "the combination of

23  polar hydrophilic salts (i.e., alkali salts of jojoba) and relatively non-polar unsaponifiables

24  (i.e., jojoba fatty alcohols) produced from the saponification of jojoba oil starting material."

25  Defendant's proposed construction is: "material derived from the jojoba plant or alternatively

26  any material that is left following the application of the saponification process to jojoba oil."

27      Plaintiff's construction is not the ordinary meaning of "jojoba-derived material."

28  Plaintiff essentially conceded this at the claim construction hearing:

> If you're asking me if you walked up to a person on the street randomly and said, 'What do you think jojoba-derived material is?' They probably would give Desert Whale's definition, something that came from a jojoba plant.

(Doc. 62 at 16). Plaintiff argues the patentee provided a unique definition for "jojoba-derived material" in the claim itself, though Plaintiff concedes it could not find any case law showing a patentee can provide a unique definition different from the plain ordinary meaning for a claim term in the claim itself. (Doc. 62 art 16). In any case, there is no indication in the claims of the Patent that the patentee intended to provide a unique definition for the term "jojoba-derived material." *See Markman*, 52 F.3d at 979 ("[A]ny special definition given to a word must be clearly defined in the specification."). The summary of the invention in the specification, moreover, clearly states:

> Unless specifically noted, it is intended that the words and phrases in the specification and claims be given the ordinary and customary meaning to those of skill in the applicable art or arts. If any other meaning is intended, **the specification will specifically state that a special meaning is being applied** to a word or phrase.

(Doc. 32-1 at 20) (emphasis added). The specification nowhere expressly states that a special meaning is being applied to "jojoba-derived material." And there is a heavy presumption that claim terms mean what they say and have their ordinary meaning. *Phillips*, 415 F.3d at 1312-13. Defendant's plain language construction of the term will be adopted.

**2.      "non-polar unsaponifiable fraction"**

Plaintiff's proposed construction of "non-polar unsaponifiable fraction" is: "the relatively water insoluble fatty alcohols that result from saponification of jojoba oil." Defendant's proposed construction is: "water insoluble fatty alcohols that result from saponification."[1]

---

[1]After the claim construction briefing and hearings concluded, the parties provided a joint list of the disputed claim terms with proposed definitions. The joint list provided slightly different (though not materially different) proposed constructions for "non-polar unsaponifiable fraction" than the parties had previously proposed and argued for in their briefs and at the hearings. The Court will consider the versions set forth in the parties' briefs and argued for at the hearing, which are set forth above.

1    The dispute turns on the inclusion of the word "relatively."  Defendant argues

2 Plaintiff's patent requires the fraction to simply be water insoluble, not relatively water

3 insoluble, because it states: "The post saponification products may be either hydrophilic

4 (water soluble) or hydrophobic (water insoluble)."  Defendant also points to the fact that

5 Plaintiff provided a specific definition for "unsaponifiable" in the specification: "Herein we

6 use the term 'unsaponifiable' to mean those materials that, after saponification is completed,

7 remain water insoluble." (Doc. 32-1 at 18).  Plaintiff argues that a person of ordinary skill

8 in the art would understand water insoluble to mean "relatively insoluble," not "absolutely"

9 insoluble.  At the hearing, Plaintiff stated that in chemistry, if applying the right energy and

10 conditions, "just about anything" can be made soluble. (Doc. 42 at 21).  Plaintiff argues a

11 chemist would understand "water insoluble" in the context of the Patent to mean relatively,

12 not absolutely, insoluble.  Defendant does not dispute that almost anything can be made

13 soluble, and presents no evidence that a chemist or other person skilled in the art would

14 understand the term "water insoluble" to mean "absolutely water insoluble."  Plaintiff's

15 proposed construction will be adopted.

16 **3.    "polar hydrophilic salts fraction"**

17    Plaintiff's proposed construction of "polar hydrophilic salts fraction" is: "relatively

18 water soluble fatty alcohols that result from saponification of jojoba oil."  Defendant's

19 proposed construction is: "water soluble alkali salts that result from saponification of jojoba

20 oil."

21    This dispute, like the previous dispute, turns on the inclusion of the word "relatively."

22 For the same reason discussed in the dispute above, Plaintiff's version, which does not

23 require absolute water solubility, will be adopted.

24 **4.    "said composition having 10%-55% (wt./wt.) non-polar unsaponifiable fraction**

25 **and a 45%-90% (wt//wt.) polar hydrophilic salts fraction . . ."**

26 **5.    ". . . wherein said non-polar unsaponifiable fraction and said polar hydrophilic**

27 **salt fraction total 100% of said jojoba-derived material"**

28

1    Plaintiff argues phrase 4 must be read in conjunction with phrase 5, with both phrases
2    together meaning: "requires that the composition contain jojoba-derived material, wherein
3    the jojoba-derived material is made up of a combination of the non-polar unsaponifiable
4    fraction and the polar hydrophilic salt fraction."   Defendant's proposed construction of
5    phrase 4 is: "requires that between 10% and 45% of the weight of the composition be non-
6    polar unsaponifiable material and between 45% and 90% of the weight of the composition
7    be polar hydrophilic salt."   Defendant's proposed construction of phrase 5 is: "requires that
8    infringing compositions be limited to those where the only material derived from the jojoba
9    plant are materials that, after the saponification reaction is completed, remain water
10   insoluble, and water soluble salts that result from saponification of jojoba oil."

11    The dispute is whether the composition as a whole must have the stated fractions, or
12   whether only the portion of the composition that is "jojoba-derived material" must have the
13   stated fractions.   Plaintiff argues the stated weight percentages apply only to the jojoba-
14   derived material, with the composition as a whole potentially containing other substances and
15   thus not having the stated ratios.   Plaintiff's construction does not comport with the plain
16   language of the claim.   Although the phrase is worded obscurely, it cannot plausibly be
17   interpreted to mean that the stated fractions do not apply to the composition as a whole.   The
18   phrase begins, "said composition **having** 10%-55% (wt./wt.) [fraction] and 45%-90%
19   (wt./wt.) [fraction] . . . ." (emphasis added), plainly indicating it is the composition that "has"
20   (or is "having") these fractions.   Although the phrase then states such fractions total 100%
21   of the jojoba-derived material portion of the composition, that condition is not inconsistent
22   with the composition having the percentages stated.   It is also not inconsistent with the
23   composition having other ingredients present.   The composition could, for example, have
24   10% non-polar unsaponifiable material, 50% polar hydrophilic salts, with the remaining 40%
25   being other ingredients, and it would still have the requisite percentages.   Plaintiff maintains
26   that this is not what the patentee intended.   There is a heavy presumption that the words in
27   a Patent mean what they say.   *Phillips*, 415 F.3d at 1312-13.   Because Plaintiff's proposed
28

1  construction ignores and contradicts the conspicuous language used in the claim, Defendant's
2  proposed construction will be adopted.

3  **6.**     **"jojoba oil starting material having about 45% unsaponifiables prior to**
4         **saponification"**

5  Plaintiff's proposed construction of this phrase is: "jojoba oil that is used as the
6  starting material for saponification, regardless of whether or not the jojoba oil has been pre-
7  treated" and having "about 45% unsaponifiables . . . prior to the pretreatment or
8  saponification." Defendant argues the phrase is indefinite as a matter of law, or alternatively,
9  means: "jojoba oil having about 45% (wt./wt.) of materials that remain water insoluble after
10 the saponification reaction is completed."

11 The dispute turns on whether the jojoba oil must, after being saponified, result in a
12 substance that contains 45% unsaponifiable (water insoluble) material.  At the hearing,
13 Plaintiff argued that just because the jojoba oil starting material begins with about 45%
14 unsaponifiable materials, does not mean that it will necessarily result in 45% unsaponifiable
15 materials after saponification.  Plaintiff explained that the percent of unsaponifiables that
16 remain after saponification can vary if the jojoba oil is pre-treated.  Defendant does not
17 dispute this.  Defendant's construction, in which the resulting substance would always have
18 to have 45% unsaponifiables *after* saponification, thus imports a limitation that does not
19 appear in the plain language of the claim.  Plaintiff's proposed construction will be adopted.

20 **7.**     **"tandem reaction products"**

21 Plaintiff's proposed construction of "tandem reaction products" is: "jojoba-derived
22 material that is produced *in situ* as a result of saponification."  Defendant argues the term is
23 indefinite as a matter of law, or alternatively, means: the "water insoluble fatty alcohols and
24 the water soluble alkali salts in the claimed composition [that] result from saponification of
25 the jojoba oil."

26 The dispute turns on the inclusion of the description "*in situ.*"  "*In situ*" means the
27 products produced from the saponification reaction are not removed or otherwise separated
28 from the original starting materials or the resulting product mix (they remain in place after

1   the reaction).  The Patent specification does not provide a definition for "tandem reaction

2   products," so the term must be construed as it would be understood by a person of ordinary

3   skill in that art.  Plaintiff provided some evidence that a person of ordinary skill in the art

4   would understand "tandem reaction products" to include this *in situ* limitation.  Dr. Arnon

5   Shani testified that he would understand the term in this manner, but his testimony was

6   convincingly contradicted by Dr. John Lombardi.  When asked what the term referred to in

7   the context of the patent claim, Dr. Lombardi replied, "I have no idea." (Doc. 62 at 68).  Dr.

8   Lombardi testified that when he first saw the term in the patent, he searched a database of

9   chemistry literature for an article referencing the term and the word saponification, but found

10  no results. (Doc. 62 at 118).  Dr. Shani admitted that the term "tandem reaction products" is

11  not commonly used in chemistry literature. (Doc. 62 at 84).  In support for its construction,

12  Plaintiff cited an abstract from a journal article that references a "tandem reaction product

13  3n [that] has been used to detect mercury 7 ions as an organic molecular probe." (Doc. 62

14  at 86).  Dr. Shani testified that he understood this reference to mean that the 3n product was

15  produced in the reaction place or *in situ*.  On cross-examination, however, Dr. Shani

16  conceded the reaction described was condensation, not saponification. (Doc. 62 at 103).  Dr.

17  Shani also admitted on cross that the reaction at issue involved two steps, in which first one

18  product is created, and then an additional substance is added to get a final product. (Doc. 62

19  at 107).  Dr. Shani admitted that different products could be added after the first reaction took

20  place, which appears to contradict Plaintiff's definition of an *in situ* reaction:

21          Q. So your interpretation here of tandem reaction products is a first
            reaction, a second reaction, and you can add more things as this reference
22          teaches. You could add more items in there?
            A. Yeah.
23

24  (Doc. 62 at 107).  Plaintiff presented no evidence that "tandem reaction products" is a

25  term of art in the relevant field.  The term is not indefinite as a matter of law, however,

26  because its meaning is clear from the context in which it is used and with reference to the

27  Patent specification.  The claim refers to the "tandem reaction products of saponification

28  of jojoba oil."  In this context, the ordinary meaning of the term is reference to two

1    particular products that result when jojoba oil is saponified.  The Patent specification

2    explains at length that two particular products result from the saponification process:

3    water insoluble fatty alcohols and the water soluble alkali salts.  Thus, it is clear in the

4    context that "tandem reaction products" refers to the water insoluble fatty alcohols and

5    the water soluble alkali salts that result from the saponification of jojoba oil.  This

6    construction will be adopted.  The *in situ* limitation will be rejected.

7    **8.    "unsaponifiables"**

8        Plaintiff's proposed construction of "unsaponifiables" is: "materials that remain

9    water insoluble after saponification, in accordance with AOCS Official Method Ca 6b-

10   53."  Defendant argues the term "unsaponifiables" should be construed to include the

11   construction of "unsaponifiable fraction" as "materials that, after the saponification

12   reaction is completed, remain water insoluble."

13       Defendant does not explain why the term "unsaponifiables" should be construed to

14   include construction of the term "unsaponifiable fraction."  In any case, the Patent

15   specification expressly defines "unsaponifiables" in the manner proposed by Plaintiff:

16       Herein we use the term 'unsaponifiables' to mean those materials that, after
         the saponification reaction is completed, remain water insoluble.  This is in
17       full accord with A.O.C.S. Official Method Ca 6b-53 . . . .

18    (Doc. 32-1 at 18).  Because the Patent expressly defined "unsaponifiables" in the manner

19   proposed by Plaintiff, the Court will adopt Plaintiff's proposed construction.

20   **9.    "pre-treated"**

21       Plaintiff's proposed construction of "pre-treated" is: "refers to a condition of

22   jojoba oil starting material indicating that the jojoba oil has been subjected to reaction,

23   processing, conditioning, and/or the like, prior to saponification."  Defendant's proposed

24   construction is: "refers to jojoba oil as having been chemically modified prior to

25   saponification."

26

27

28

Defendant did not provide a proposed construction of "pre-treated" in the claim construction briefing and provided no arguments in support of the construction it now proposes.[2]  Plaintiff's proposed construction will be adopted.

**10.    "saponification"**

Plaintiff's proposed construction of "saponification" is: "the hydrolysis reaction of jojoba oil starting material with an alkali metal or alkaline earth metal hydroxide to form jojoba-oil starting material."  Defendant's proposed construction is: "the hydrolysis reaction of a wax, oil or fat with an alkali metal or alkaline earth metal hydroxide."

Defendant did not provide a proposed construction of "saponification" in the claim construction briefing and provided no arguments in support of the construction it now proposes.  Plaintiff's proposed construction will be adopted.

**11.    "acetylation"**

Plaintiff's proposed construction of "acetylation" is: "a chemical reaction that introduces an acetyl functional group onto a molecule."  Defendant argues the term is indefinite as a matter of law, because the term does not appear in the specification or the file history.

Plaintiff argues a person of ordinary skill in the art would understand the term "acetylation" to have the same meaning, with simply a different tense, as the term "acetylated," which is used in the specification.  Defendant did not dispute this. Plaintiff's proposed construction will be adopted.

**12.    "concentration"**

Plaintiff's proposed construction of "concentration" is: "the act of process of concentrating a chemical compound (or group of chemical compounds) in relation to other chemical compounds (or groups of chemical compounds)."  Defendant argues the

_____

[2]  Defendant only provided a proposed construction in the parties' joint statement of disputed terms, which was filed after the briefing and hearings were concluded.

1  term is indefinite as a matter of law, because the term does not appear in the specification

2  or the file history.

3        Plaintiff argues a person of ordinary skill in the art would understand the term

4  "concentration" to have the same meaning, with simply a different tense, as the term

5  "concentrated," which is used in the specification.  Defendant did not dispute this.

6  Plaintiff's proposed construction will be adopted.

7        Accordingly,

8        **IT IS ORDERED** the disputed claim terms are constructed as follows:

9

| Claim Language | Construction |
|---|---|
| jojoba-derived material | material derived from the jojoba plant or alternatively any material that is left following the application of the saponification process to jojoba oil |
| non-polar unsaponifiable fraction | the relatively water insoluble fatty alcohols that result from saponification of jojoba oil |
| polar hydrophilic salts fraction | the relatively water soluble fatty alcohols that result from saponification of jojoba oil |
| said composition having 10%-55% (wt./wt.) non-polar unsaponifiable fraction and a45%-90% (wt//wt.) polar hydrophilic salts fraction | requires that between 10% and 45% of the weight of the composition be non-polar unsaponifiable material and between 45% and 90% of the weight of the composition be polar hydrophilic salt |
| wherein said non-polar unsaponifiable fraction and said polar hydrophilic salt fraction total 100% of said jojoba-derived material | requires that infringing compositions be limited to those where the only material derived from the jojoba plant are materials that, after the saponification reaction is completed, remain water insoluble and water soluble salts that result from saponification of jojoba oil |
| jojoba oil starting material having about 45% unsaponifiables prior to saponification | jojoba oil that is used as the starting material for saponification, regardless of whether or not the jojoba oil has been pre-treated, and having about 45% unsaponifiables . . . prior to the pretreatment or saponification |
| tandem reaction products | the water insoluble fatty alcohols and the water soluble alkali salts that result from the saponification of jojoba oil |

| unsaponifiables | materials that remain water insoluble after saponification, in accordance with AOCS Official Method Ca 6b-53 |
| --- | --- |
| pre-treated | refers to a condition of jojoba oil starting material indicating that the jojoba oil has been subjected to reaction, processing, conditioning, and/or the like, prior to saponification |
| saponification | the hydrolysis reaction of jojoba oil starting material with an alkali metal or alkaline earth metal hydroxide to form jojoba-oil starting material |
| acetylation | a chemical reaction that introduces an acetyl functional group onto a molecule |
| concentration | the act of process of concentrating a chemical compound (or group of chemical compounds) in relation to other chemical compounds (or groups of chemical compounds) |

DATED this 29th day of September, 2010.

Roslyn O. Silver
United States District Judge